# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JAMES KRAFT,**

                **Plaintiff,**

-vs-                                                              Case No.  6:18-cv-1469-Orl-41GJK

**FREIGHT HANDLERS, INC. and**
**FHI, LLC,**

                **Defendants.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration, without oral argument, on the following motion:

| | |
|---|---|
| **MOTION:** | **CLASS REPRESENTATIVE'S MOTION FOR CONDITIONAL CLASS CERTIFICATION WITH INCORPORATED MEMORANDUM OF LAW** (Doc. No. 60) |
| **FILED:** | **February 19, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

**I.     BACKGROUND.**

On September 7, 2018, Plaintiff filed suit against Defendants for violations of the Fair Labor Standards Act ("FLSA") for failure to pay overtime wages and a minimum wage as required by the FLSA for non-exempt employees.  Doc. No. 1.  Plaintiff alleges he, and those similarly situated, were employed to unload goods from trucks and break down pallets for

Defendants as "Unloaders" at various warehouse and distribution facilities and that they were compensated on a production basis. Doc. No. 1 at 7; Doc. No. 60 at 3. Plaintiff alleges: (1) Unloaders were required to work prior to their regularly scheduled shifts and before they were clocked in; (2) managers were instructed to clock Unloaders out for approximately one hour each day while they continued to work; and (3) Unloaders were required to clock out at the end of the day and remain onsite performing unpaid work. Doc. Nos. 1 at 2; 60 at 3-4. Plaintiff alleges that despite working in excess of forty hours per week, he and other Unloaders were not properly compensated for their overtime, nor were they provided a minimum wage in some circumstances. Doc. No. 1 at 8.

Defendants provide third-party logistics services assisting customers with receipt and distribution of goods at the customers' warehouses and distribution facilities.[1] Doc. Nos. 60 at 2-3; 69-1. Defendants employ "Freight Handlers" who assist in unloading and loading trucks at these facilities.[2] Doc. Nos. 60 at 3; 60-15; 69-1. Defendants' operations are divided into four regions (south, northeast, midwest, and west), each region has a regional manager who covers three to seven states with three to sixteen distribution centers. Doc. No. 69-1 at 3. The

---

[1] For example, Publix and Meijer are clients. Doc. No. 60 at 3.
[2] The Freight Handlers job description posted on Defendants' website provides:

> Freight Handlers unload trailers delivering product to our distribution warehouses and use powered industrial equipment (Powered pallet jacks, Fork lifts, Dock stockers) as the primary means of removing product from the trailer; however, hand stacking cases of product is an integral and repetitive part of the unloading process. Work is performed in a warehouse setting and is physically demanding. Freight Handlers must be able to unload tractor trailers safely and efficiently while working in a fast paced environment. . . .
> Production Based Pay.

Doc. No. 60-15 at 6. While these employees are also referenced as Unloaders in Plaintiff's Complaint and Lumpers in some of the Declarations made by Opt-In Plaintiffs, each descriptor identifies the same position at the distribution centers. Doc. No. 60 at 1. The Court will use the designation "Freight Handlers" that is provided in the job description. Doc. No. 60-15 at 6.

customers own the distribution centers, and Defendants provide unloading and other support services at 38 distribution centers, 14 of which are owned by Publix, Cheney Brothers, and Meijer grocery stores. Doc. No. 69-1 at 3. Defendants' written policies strictly prohibit off-the-clock work. Doc. No. 69-1 at 6-7. Defendants currently employ 1,232 Freight Handlers at 38 distribution centers in 19 states. Doc. No. 69-1 at 7. While Freight Handlers all unload trucks and are paid on a production basis, they may be assigned other job duties and be paid hourly or flat rates in some instances. Doc. Nos. 69-1 at 8-9; 69-3.

On February 19, 2019, Plaintiff filed a Motion to Conditionally Certify Collective Action and Facilitate Notice to Members of the FLSA Collective and Incorporated Memorandum of Law (the "Motion"). Doc. No. 60. Plaintiff seeks court-supervised notice to all Freight Handlers, employed by Defendants within the last three years.[3] Doc. No. 60 at 1. Plaintiff seeks class certification related to the requirement that Freight Handlers work off the clock and the related failure to pay overtime wages for those off-the-clock hours. Doc. No. 60 at 6. Three Freight Handlers filed consents with the Complaint (Eugene Couch, Marcus Kennedy, and Duvan Nichols), and as of the filing of the Motion, there were seven additional opt-in plaintiffs who, along with Plaintiff, worked in six different warehouse locations across four states as Freight Handlers working for Publix and Meijer. Doc. Nos. 2, 15, 19, 44, 45, 57, 58, 60 at 6 (James Wild, Edward Green, Luis Torres, Lavarius Vinson, Jimmian Alvarado, Richard Doggett, and Larry Holden). Two additional consents were filed after the Motion was filed (Eric Vega and Joshua Ergle). Doc. Nos. 61 and 62. Thus, a total of twelve consents have been filed.

---

[3] Plaintiff seeks "court-supervised notice . . . to all "Freight Handlers" (a/k/a "Lumpers" and/or "Unloaders" and other employees performing similar [unloading] duties, however variously titled) employed by Defendants . . . within the last three years." Doc. Nos. 60 at 1, 60-1 at 2.

## II.     MOTION FOR CONDITIONAL CLASS CERTIFICATION.

Plaintiff seeks relief under 29 U.S.C. § 216(b) of the FLSA and asks the Court to conditionally certify the aforementioned class. Doc. No. 60 at 1-2. Plaintiff also asks that he be appointed class representative. *Id.* He requests that the Court permit and supervise notice to the class using the Notice and opt-in form attached to the Motion, authorize notice via email, text and U.S. mail, authorize a reminder notice to be sent to the class, post the Notice at Defendants' facilities, and authorize members to sign their consents electronically. *Id.* Finally, Plaintiff asks that the Court order Defendants to provide him with information regarding everyone in the class. *Id.*

### A.     Legal Standard

There is a two-step procedure for whether a FLSA collective action should be certified: 1) the notice stage; and 2) the decertification stage. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The Motion falls under the notice stage. The notice stage is when "a district court determines whether other similarly situated employees should be notified." *Id.*

At the notice stage, "[a] plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." *Id.* (quoting *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). The standard for determining similarity at the notice stage is fairly lenient, not particularly stringent, and not heavy. *Morgan*, 551 F.3d at 1261. In addition to determining whether there are similarly situated employees to the plaintiff, the court must also "satisfy itself that there are other employees of the []employer who desire to 'opt-in' . . . ." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

### B.      Other Employees Desiring to Opt In

Plaintiff has the burden to provide a reasonable basis supporting his position that other aggrieved individuals exist in the broad putative class. *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-CV-00470-T-27, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012).  Plaintiff asks the Court to conditionally certify a nationwide class of all Freight Handlers.  Doc. No. 60 at 17. Defendants have indicated that they currently employ 1,232 Freight Handlers at 38 distribution centers in 19 states and have employed approximately 7,700 Freight Handlers across 65 distribution centers in 21 states in the last three years.  Doc. No. 69-1 at 7.

Since the Complaint was filed, twelve people filed consents to join this litigation (collectively, "Opt-In Plaintiffs").  Doc. Nos. 2, 15, 19, 44, 45, 57, 58, 59, 61, and 62.  The Opt-In Plaintiffs work in Florida, Michigan, Georgia, and Ohio.  Doc. Nos. 60-3, 60-4, 60-5, 60-6, 60-7, 60-8, 60-9, and 60-10.  The Opt-In Plaintiffs have stated that other Freight Handlers would join the action if they received notice.  *Id.*  Freight Handlers are employed in all of Defendants' locations.  Doc. No. 69-1.  The Court finds that Plaintiff has sufficiently credited his assertion that "aggrieved individuals exist[] in the broad class that [he] propose[s]." *Allen v. Hartford Fire Ins. Co.*, No. 6:16-CV-1603, 2017 WL 3701139, at *7 (M.D. Fla. Aug. 25, 2017) (quoting *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)  (finding sufficient interest where sixteen consents-to-join had been filed by non-named employees and those employees holding the same titles worked in seven different locations in five different states)); *Palma v. MetroPCS Wireless, Inc.*, 8:13-cv-698, 2013 WL 6597079, at *3  (M.D. Fla. Dec. 16, 2013) (presence of nine opt-in plaintiffs sufficient for conditional nationwide class certification).

It is recommended that the Court find that Plaintiff sufficiently demonstrates the requirement for issuance of notice that there are other people that are or were Freight Handlers nationwide that may wish to opt-in to the FLSA action. However, based on a class settlement in California between Freight Handlers and Defendants which releases any FLSA claims against Defendants and has overlapping time frames, it would appear that extending the notice to California would be inappropriate. Doc. Nos. 69 at 22 n. 34, 69-7 at 16-18.[4] Thus, the class should be redefined as a nationwide class of Freight Handlers (a/k/a Unloaders and/or Lumpers and/or other employees performing similar duties, however variously titled) who worked for Defendants, Freight Handlers, Inc. and FHI, LLC, within the last three years of the filing of this action, except those Freight Handlers who worked in California.

### C. Similarly Situated

Plaintiff must be "'similarly situated' with respect to [his] job requirements and with regard to [his] pay provisions . . . ." *Dybach*, 942 F.2d at 1567–68. Plaintiff has the burden of demonstrating similarity. *Kelley v. Taxprep1, Inc.*, No. 5:13-CV-451-OC-22PRL, 2014 WL 10248251, at *2 (M.D. Fla. Apr. 2, 2014). Similar does not mean identical. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). Job duties, pay provisions, and whether the employees were subjected to a common policy that is the basis for the alleged FLSA violation are factors to be considered in determining whether Plaintiff is similarly situated to the proposed class. *Allen*, 2017 WL 3701139, at *7. "A pattern or standard practice of denying due compensation may satisfy the 'similarly situated' requirement for conditional certification of a collective action." *Whineglass v. Smith*, 8:22-cv-2784, 2012 U.S. Dist. LEXIS 175511, at *13

---

[4] The class action was filed in California state court and was managed as an opt-out class versus an opt-in class. Doc. No. 69-7. The release includes any FLSA claims, and the claims alleged against Defendants in this action included claims for overtime wages and minimum wages. Doc. No. 69-7.

(M.D. Fla. 2012) (citing *Reed v. Mobile Cty. School Sys.*, 246 F. Supp. 2d 1227, 1233-34 (S.D. Ala. 2003)).

At the center of this litigation are allegations that Freight Handlers' time was not properly recorded for their work, specifically that Freight Handlers were clocked out while they were not actively unloading trucks, but when they were still required to complete other clean-up work, and that they were made to work off-the-clock both before and after their shifts. Doc. Nos. 1, 60-3 to 60-11. Plaintiff alleges that despite working in excess of forty hours per week, he and other Freight Handlers were not properly compensated for their overtime hours or paid the equivalent of minimum wage. Doc. No. 1 at 8.

Regarding job duties, there is no dispute that Freight Handlers are primarily responsible for unloading trucks that come into customers' distribution centers and warehouses and are paid on a production basis for their work. Doc. Nos. 1, 60, 60-15, 69-2, 69-3. Plaintiff and Opt-In Plaintiffs all state that they primarily unloaded trucks, broke down pallets, and were paid on a production basis as Freight Handlers. Doc. Nos. 60-3 at 3-4, 60-4 at 3-4, 60-5 at 3-4, 60-6 at 3-4, 60-7 at 3-4, 60-8 at 3, 60-9 at 3-4, 60-10 at 3-4, 60-11 at 3-4. The twenty-six declarations of current Freight Handlers offered by Defendants in opposition to the Motion reflect a consistent description of their work, with shifts beginning with stretching and the initial assignment to incoming trucks, unloading trucks for the duration of their shifts, sometimes manually and sometimes with forklifts, the preparation of the trucks' contents for the next step (either sorting, segregating, or repackaging products), handling the breakdown or sorting of pallets, and any required clean up. Doc. Nos. 69-3 at 3, 13, 17, 18, 23, 29, 30, 42, 49, 51, 55, 57, 61, 62, 74, 75,

87, 89, 94, 102, 104, 117, 119, 124, 134, 136, 147, 148, 152, 153, 158, 160, 165, 166-67, 171, 172, 177, 179, 184, 185, 189, 191, 196, 197-98.

Similarly, the declarations demonstrate a consistency in the method of pay. Doc. Nos. 60, 60-3 to 60-11, 69-3. All Freight Handlers are paid on a production basis, with minor exceptions, and the amount of pay varies based on the type and number of trucks unloaded. Doc. Nos. 60-3, 60-4, 60-5, 60-6, 60-7, 60-8, 60-9, 60-10, 60-11, 69-3 at 5, 11, 14, 20, 26, 32, 42, 50, 58, 64, 77, 90, 97, 106, 121, 127, 137, 149, 155, 161, 168, 174, 181, 187, 192, 200-01. Freight Handlers are sometimes paid a flat rate to unload certain types of trucks, may be paid a flat rate to load trucks (although this is not their primary job duty), and they may be paid a flat rate for other smaller jobs like handling totes, moving milk crates, or an hourly rate for a special project. Doc. No. 69-3 at 11, 49, 50, 97, 106, 131, 147, 149, 161-62, 181, 185, 187, 192-93.

Defendants essentially argue that the devil is in the details and the Freight Handlers in each distribution center cannot be similarly situated because they work different shifts, have different break times, they work in different departments, and they are paid different amounts based on the type of truck they are unloading. Doc. No. 69 at 8, 12-15. Defendants argue that these variations demonstrate Freight Handlers are not sufficiently similar to permit conditional class certification because "what a Handler does and how he or she gets paid depend on his or her shift, department, and distribution center and the Acting Leads under whom he or she works." Doc. No. 69 at 15. However, at the notice stage, the declarations submitted by Plaintiff, and the declarations offered by Defendants, demonstrate similar job duties and pay rates. Similar does not mean identical. *Hipp*, 252 F.3d at 1217. Here, Plaintiff has demonstrated that "the pay provisions and job requirements of the interested, non-named

8

employees' positions are materially similar to those of . . . the named Plaintiffs. At the notice stage, that is all that the 'similarly situated' standard requires." *Monserrate v. Hartford Fire Ins. Co.*, No. 6:14-cv-149, 2015 U.S. Dist. LEXIS 86610, at *13-14 (M.D. Fla. July 1, 2015); *see also Garrison v. Chuck, Carol & Co.*, No. 6:06-cv-1656, 2007 U.S. Dist. LEXIS 26737, at *12-13 (M.D. Fla. Apr. 11, 2007) (finding that although there were difference in the duties performed by the plaintiffs, the fact that all labored to build metal buildings for defendants, were paid on an hourly basis, and were allegedly subject to the same pay practice was sufficient to demonstrate they were similarly situated).

Defendants next argue that Plaintiff cannot demonstrate a "common policy" requiring Freight Handlers to work off the clock. Doc. No. 69 at 15. Defendants argue that their official policies prohibit off-the-clock work. Doc. No. 69 at 16; 69-3. Defendants argue they have provided evidence that other Freight Handlers at the facilities where some of the Opt-In Plaintiffs work were not required to work off the clock. Doc. No. 69 at 16. However, these factual allegations are not properly considered at the notice stage. *Gonzalez v. TZ Ins. Solutions, LLC*, 8:13-cv-2098, 2014 U.S. Dist. LEXIS 40188, at *9 (M.D. Fla. Mar. 26, 2014) (where defendant proffered competing affidavits by present employees challenging allegations of off the clock work, the court found the proffers exceeded the Court's limited inquiry at the notice stage and were premature); *Simpkins v. Pulte Home Corp.*, No. 6:08-cv-130, 2008 U.S. Dist. LEXIS 64270, at *14-15 (M.D. Fla. Aug. 21, 2008). The Opt-In Plaintiffs have averred that they were clocked out when they were not actively unloading trucks and were still required to perform work including breaking down boxes and cleaning up. Doc. Nos. 60-3 to 60-11. Plaintiff has stated that he was both subject to this off-the-clock work requirement and was required to

impose this requirement on others when he input hours as a back up lead and assistant production manager.  Doc. No. 60-7 at 4-6.  Plaintiff and Opt-In Plaintiffs allege they were systematically not paid for all of their overtime hours through a common practice.  Doc. Nos. 60, 60-3 to 60-11.  Shawn Parrish, a former manager, states that this is a company-wide practice.  Doc. No. 60-11 at 17-20.  At the notice stage, this is sufficient.  *Allen*, 2017 WL 3701139, at *7.

Defendants also argue that the decentralized nature of timekeeping and the irregular nature of the off-the-clock work reported will create far too many individualized claims.  Doc. No. 69 at 15-20.  Defendants argue that because timekeeping is not done by one person there can be no company-wide practice, and because the amount of overtime claimed is so diverse, there is no way to address Plaintiff's claims of improper timekeeping *en masse*.  Doc. No. 69 at 15-20.  Again, these are arguments that are more properly addressed at the second stage of the certification process.  *Allen*, 2017 WL 3701139, at *8 (finding that plaintiffs met the similarly situated requirement for conditional certification, even though defendant asserted the administrative exemption); *Creely*, 789 F. Supp. 2d at 828.  Defendants' arguments are premature at this juncture.

Finally, Defendants argue that Plaintiff is not sufficiently similarly situated because he also acted as a lead that input time and he represents an irreconcilable conflict between managers who input time and Freight Handlers.  Doc. No. 69 at 2-21.  However, Plaintiff was a Freight Handler for three years and was a lead for a few months.  Doc. No. 60-7.  Further, even when he acted as a lead, Plaintiff continued to be paid on a production basis for unloading trucks and performing his other Freight Handler duties.  Doc. No. 60-7.

Defendants argue that acting leads/managers cannot be included in the proposed class because those acting leads were responsible for ensuring compliance with the law. Doc. No. 69 at 21. Defendants cite to *White v. Osmose*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002) to support their argument, noting that where foremen had a "number of administrative duties" the court found the foremen and their crewmen were not similarly situated. In that case, foremen supervised and directed crewmen's work full-time. *Id.* They performed numerous administrative duties associated with the planning and execution of field work. *Id.* The circumstances here differ from that case. Defendants go to great lengths in explaining the decentralized nature of the tracking of hours and the role of "Acting Leads" whose job it was to input time for their fellow Freight Handlers.[5] Acting Leads changed regularly and when they were not Acting Leads they reverted back to their primary responsibility, Freight Handlers, and received only Freight Handlers' pay. Doc. No. 69-1 at 5. Unlike the foremen in *White* whose jobs were supervisory, the Acting Leads have more in common with their Freight Handler counterparts. They were still paid on a production basis with an additional per diem payment of $25 or $50 for acting as a lead. Doc. No. 60-7. At the notice stage, this does not preclude a finding that Acting Leads were similarly situated with Plaintiff and the other Opt-In Plaintiffs. Again, whether the class can go forward with both Freight Handlers, who are also Acting Leads, and those who are only Freight Handlers is an issue best left for the second step of certification

---

[5] "Acting Leads are non-exempt employees who *in addition to unloading trucks and performing typical Handler duties* are also responsible for clocking Handlers and themselves in and out on a handheld device, assigning trucks for unloading, addressing payroll concerns, and finalizing the same."" Doc. No. 69-1 at 4. "Acting Leads earn an additional fixed amount on top of their Handler pay for every day that they work as an Acting Lead." Doc. No. 69-1 at 5. "[O]n days that an Acting Lead is not assigned to work as an Acting Lead, s/he works solely as a Handler and earns only Handler pay." Doc. No. 69-1 at 5. "It is common to have multiple Acting Leads on a shift who rotate and work as Acting Leads on different days." Doc. No. 69-1 at 5.

as the Court cannot say that Acting Leads cannot be similarly situated to Freight Handlers based on Plaintiff's declarations. Doc. Nos. 60-3 to 60-11; *see also* 69-1, 69-3.

### D.     Notice

Plaintiff proposes both the Notice and a forty-five day reminder notice be sent to potential class members. Doc. Nos. 60 at 1-2, 60-1. Plaintiff also asks that the notice be posted at Defendants' locations, mailed, emailed, and texted to potential class members. Doc. No. 60. Defendants make no argument with respect to the Notice itself other than raising generalized arguments in a footnote. Doc. No. 69 at 24 n. 37. Defendants argue the Notice is too one-sided, fails to advise potential recipients that they could be responsible for Defendants' costs and attorney's fees, and the Notice contains "other deficiencies" that warrant its rejection. Doc. No. 69 at 24 n. 37.

It is recommended that the proposed Notice be amended. In the section on Effects of Joining Suit, (Doc. No. 60-1 at 3), the language should be modified as follows: "If Defendants prevail, then you will be responsible for their costs in this matter. While the suit is pending, you may be required to provide information or sit for depositions and testify in court in the Orlando Division of the Middle District of Florida." The final sentence should be amended to reflect that the potential class member will not be responsible to pay Plaintiff's counsel's attorney's fees directly. The Notice should state that the potential class members have the right to retain their own counsel.

As Plaintiff does not provide any reason why using both mail and email will not be effective in reaching the potential class members, his request to post the notice at Defendants' locations is denied. *Gear v. Vista Clinical Diagnostic, LLC*, No. 5:15-CV-495-OCCEMPRL,

2016 WL 7045618, at *5 (M.D. Fla. June 3, 2016), *report and recommendation adopted*, No. 5:15-CV-495-OC-41PRL, 2016 WL 7213052 (M.D. Fla. July 1, 2016) (denying request to post notice where the "[p]laintiffs have failed to offer any explanation as to why three alternative modes of delivery are necessary."); *see also Gonzalez v. TZ Ins. Sols., LLC*, No. 8:13-CV-2098-T-33EAJ, 2014 WL 1248154, at *6 (M.D. Fla. Mar. 26, 2014) ("other courts have required that Class Notice be posted at the workplace only after a showing that a defendant has failed to cooperate in the collective action process.). Similarly, Plaintiff has not demonstrated a need to transmit the notice via text message in addition to notice via email. *See, e.g., Brashiers v. Quincy Prop., LLC*, 3:17-cv-3022, 2018 U.S. Dist. LEXIS 68948, at *21 (C.D. Ill. Apr. 24, 2018) (transitory nature of work force and poor records of physical addresses made notice by text message appropriate). Plaintiff's request to send a reminder is also denied. *Palma*, 2014 WL 235478, at *3 ("Sending a putative class member notice of this action is informative; sending them a 'reminder' is redundant.")

Plaintiff seeks to permit the proposed class members to execute their consents via electronic signatures. Doc. No. 60 at 24. Defendants have not objected to this request. The FLSA requires that a plaintiff to any FLSA collective action give his or her consent "in writing." 29 U.S.C. § 216. "When courts allow notice to be distributed via email, they regularly allow opt-in plaintiffs to execute consent forms electronically." *Rivenbark v. JPMorgan Chase & Co.*, 340 F. Supp. 3d 619, 627 (S.D. Tex. 2018); *Brashiers*, 2018 U.S. Dist. LEXIS 68948, at *21; *Landry v. Swire Oilfield Servs., LLC*, 252 F. Supp. 3d 1079, 1130 (N.M. 2017) (we live in a time when all manner of commercial transactions are routinely cemented by electronic submission) (internal quotation marks omitted)); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517-18

(W.D. Tex. 2015) (finding the FLSA does not contain a "signature" requirement, and the federal "E-Sign Act" and Texas law provide that an electronic signature may not be denied legal effect, validity or enforceability). Florida law recognizes the validity of electronic signatures. Fla. Stat. § 668.004 ("Unless otherwise provided by law, an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature."). Here, given the potential size of the class and the use of email to provide notice to potential class members, consents executed by electronic signature should be permitted.

### III.  CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Motion (Doc. No. 60) be **GRANTED IN PART AND DENIED IN PART** as follows:

1. That the Court conditionally certify the following class: All Employees of Freight Handlers, Inc. and FHI, LLC who: (1) are or were employed as "Freight Handlers" (also known as "Unloaders" or "Lumpers" or other employees performing similar duties however variously titled) during the three (3) years preceding the filing of this suit; and (2) worked more than forty hours in a work week without being paid proper overtime compensation or worked forty hours in a work week without being paid minimum wage;

2. That Plaintiff's counsel be appointed as class counsel;

3. That Defendants be directed to provide Plaintiff with the names, job titles, dates of employment, last known addresses, telephone numbers, and email addresses for everyone in the class within ten days of the Court's order on the Motion;

4. That Plaintiff email and mail a notice to potential members of the class in the form provided in Doc. No. 60-1, with the revisions described within this Report and

Recommendation, and the Consent to Become Class Member Pursuant to 29 U.S.C. § 216(b), in the form provided in Doc. No. 60-2;

5. Potential class members may electronically sign their consents; and
6. That in all other respects, the Motion be **DENIED**.

### NOTICE TO PARTIES

The parties have fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on May 21, 2019.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Unrepresented Parties