IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. 6:18-cv-1469-WWB-GJK

**JAMES KRAFT, DAVID RIVERA, ALEX
HERRING, JOHN MADDIS JR. TYLER
VIERA, and JOSEPH LACKEY JR., on
behalf of themselves and those similarly
situated,**

      Plaintiffs,

v.

**FREIGHT HANDLERS, INC., a foreign for
profit corporation and FHI, LLC, a foreign
limited liability company,**

      Defendants.

_____

***AMENDED* JOINT MOTION FOR APPROVAL OF SETTLEMENT
AND FOR DISMISSAL WITH PREJUDICE
WITH INCORPORATED MEMORANDUM OF LAW**

     Plaintiffs, JAMES KRAFT, DAVID RIVERA, ALEX HERRING, JOHN MADDIS,

JR., TYLER VIERA, and JOSEPH LACKEY (the "Named Plaintiffs"), and Defendants,

FREIGHT HANDLERS, INC. and FHI, LLC (collectively referred to herein as "Defendants")

(together with the Named Plaintiffs, the "Parties") file this *Amended* Joint Motion for Approval of

Settlement and For Dismissal with Prejudice requesting that the Court approve the Parties'

Settlement Agreement and Release (the "Settlement Agreement"). Since the Court denied without

prejudice the Parties' prior Motion for Approval (Dkt. # 267), the Court has granted Defendants'

Motion for Summary Judgment (Dkt. # 271). Therefore, all that remains in this case is the Court's

approval of the Parties' settlement. In support of their Motion, the Parties state as follows:

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff JAMES KRAFT filed this action for unpaid wages and overtime pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. ("FLSA") in September 2018.  In his Complaint, Kraft alleged that he and other similarly-situated current and former Handlers[1] were forced to work "off-the-clock" and denied overtime and minimum wage compensation.  (Dkt. # 1).  Specifically, Kraft alleged that Defendants required him and other Handlers to (a) "work prior to their regularly scheduled shifts and before they were clocked in;" (b) work "approximately 1 hour each day" during which their managers clocked them out; and (c) "clock out at the end of the day and remain onsite performing unpaid work." Defendants filed their Answer and Affirmative Defenses on October 9, 2018. (Dkt. # 23).  Defendants deny all of Kraft's allegations and contend that Kraft and the putative class he sought to represent were properly compensated at all times, and were not owed any damages.   After Kraft filed this action and Defendants answered, thirteen other individuals filed Consent to Join forms: Edward Green, Jimmian Alvarado, Eugene Couch, Richard Doggett, Luis Torres, Duvan Nichols, Jonathan Mason, Lavarius Vinson, Eric Vega, Larry Holden, Marcus Kennedy, Joshua Ergle, and James Wild ( "Pre-Notice Opt Ins").

On September 27, 2018, the Court entered a Scheduling Order (Dkt. # 25), in which it required the Parties to exchange all documents, including timesheets and payroll records pertaining to Kraft and any Pre-Notice Opt-ins.   Kraft and the Pre-Notice Opt Ins were also required to respond to Court Interrogatories providing the basis of their claims and an estimate of their damages.  In compliance with the Scheduling Order, the Parties exchanged thousands of pages of time and payroll records.

---

[1] Handlers are also referred to as "Unloaders" or "Lumpers".

On February 19, 2019, Kraft filed a Motion for Conditional Certification pursuant to § 216(b) of the FLSA.  (Dkt. # 60).  Defendants filed their Response in Opposition on March 26, 2019. (Dkt. # 69).  On July 31, 2019, the Court conditionally certified a nationwide class of Handlers "with the exception of California employees."  (Dkt. # 90).  Notice was sent to 6,065 putative class members on October 31, 2019 *via* United States Mail and email.  Approximately 683 additional putative class members opted in ("Post-Notice Opt Ins") after distribution of the notice.  The Court held a Status Conference on February 19, 2020, and the following day Judge Baker ordered that a questionnaire "be sent to all opt-in plaintiffs with a deadline for responses within thirty-five (35) days from the date of the hearing."  (Dkt. # 157).  Plaintiffs' Counsel distributed the questionnaire in accordance with the Court's Order.   Four hundred and thirty-two Opt Ins returned their questionnaires.  Defendants moved to dismiss 251 opt-in plaintiffs who did not respond to the questionnaire, and the Court granted the Motion.  (Dkt. ## 203, 241).  Thereafter, a total of 440 Plaintiffs were left in this action, including the Named Plaintiff and the Pre-Notice Opt-Ins.

On May 15, 2020, Plaintiffs filed their First Amended Complaint to include Rule 23 state law wage and hour claims under Wisconsin law (DWD §272.12(1)(a)1, "Wisconsin Wage Law"), New York law (New York Labor Law §§ 190 *et seq*., 650 *et seq*., and the New York Wage Theft Prevention Act), Massachusetts law (Massachusetts Wage Laws, Mass. Gen. L. c. 151 § 1A, § 1B), Pennsylvania law (Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, "PMWA"), and Ohio law (Ohio Minimum Fair Wage Standards Act, Ohio Constitution, Article II, Section 34a, and the Ohio Prompt Pay Act).  (Dkt. # 199).  Defendants filed their Answer and Affirmative Defenses to the Amended Complaint on May 29, 2020. (Dkt. # 206).

Thereafter, the Court ordered the Parties to submit a Second Amended Case Management Report, including a representative discovery plan, and a proposed schedule governing the case moving forward. The Parties submitted the Second Amended Case Management Report, and competing discovery plans. After conducting a scheduling conference with the Parties, the Court issued an Order and Report and Recommendation setting forth a discovery plan for the remainder of this case. (Dkt. # 221). The Order allowed the Parties to engage in the following discovery:

a. Defendants may depose the named plaintiff Kraft, as well as the 5 state law class representatives, and the 13 Pre-Notice Opt Ins;

b. Defendants may depose 20% of the Post-Notice Opt-Ins (i.e. 87 Post-Notice Opt Ins), and 10% of the Opt In Plaintiffs in each of the Rule 23 classes;

c. Plaintiffs may take corporate representative depositions of each of the 2 Defendants, as well as a corporate representative deposition for each of the 5 Rule 23 classes;

d. Plaintiffs may depose a management employee from each warehouse facility where an opt-in plaintiff works or worked, which is approximately 50 depositions;

e. Plaintiffs may depose the direct supervisor of each opt-in plaintiff that is deposed by Defendant, or approximately 87 depositions;

f. Defendants are permitted to serve written discovery on the remaining Opt In Plaintiffs who are not deposed (approximately 360 Opt Ins), including 15 interrogatories (including subparts), 10 requests to produce, and 25 requests for admission on each such opt-in plaintiff; and

g. Plaintiffs may seek written discovery and records from Defendants and from each warehouse facility.

The Order permitted over 250 depositions and at least 360 sets of written discovery.

4

The Parties decided to explore the potential for settlement before engaging in potentially costly discovery.  Accordingly, on June 17, 2020, the Parties requested a settlement conference before a magistrate judge.  (Dkt. # 216).  Thereafter, the Court referred the case to U.S. Magistrate Judge Leslie R. Hoffman to conduct a settlement conference.  (Dkt. # 222).  The Parties attended a settlement conference with Judge Hoffman on August 13, 2020.  After mediating from 10:00 A.M. to 7:06 P.M., the Parties reached a resolution of the claims for damages for the Plaintiffs in the case (the "Settlement for Damages").  (Dkt. # 244).

On November 17, 2020, the parties attended a second settlement conference with Judge Hoffman to mediate the claim for attorneys' fees and costs.  After a week of pre-mediation settlement discussions, as well as negotiations at the settlement conference, the parties resolved the claim for attorneys' fees and costs.  Therefore, all claims in this case have been fully resolved.

In reaching the Settlement for Damages, the Parties considered the substantial risks they both faced, and the expenses already incurred after two years of litigation and contested motion practice.  Further, Defendants intended to file a motion to decertify the FLSA Collective and intended to oppose Plaintiffs' motion for certification of the Rule 23 state law class claims.  Additionally, Defendants intended to file motions for summary judgment as to the merits of Plaintiffs' claims.  Given the substantial motion practice that loomed ahead, the attorneys' fees and expenses associated with such discovery would accumulate at a much faster rate than what the Parties had incurred at the time they settled.

Absent settlement, this litigation, which had already been vigorously litigated for two years, would continue to be vigorously litigated at great expense to the Parties.  Settlement saves the Parties and the Court the significant expenditure of time and resources that continued litigation would demand.

## II.    PROPOSED SETTLEMENT TERMS

The Parties agreed to settle the claims for damages in this case for the gross amount of $315,000.00 ("Gross Settlement Amount").  The Parties have further agreed to settle the claim for attorneys' fees and costs for $400,000.00.  The Gross Settlement Amount will be distributed to 343 of the Plaintiffs.  The individual settlement payments to be made to each Plaintiff from the Gross Settlement Amount are outlined in attachment B to the Settlement Agreement.  Defendants will generate the settlement checks in the stated amounts to these plaintiffs, and deduct any applicable taxes or other deductions from each check.  Defendants will pay employer's share of payroll taxes separate from the Gross Settlement Amount.  The remaining 97 Plaintiffs' claims are barred by the FLSA's three-year statute of limitations.  The Court granted  summary judgment on these time-barred claims and judgment in Defendants' favor was entered on these claims (Dkt. #s 262, 271, 272).

Although the statute of limitations for FLSA claims is two years absent a showing of willfulness, the parties agreed to apply a three-year statute of limitations to maximize each Plaintiff's recovery.  However, in exchange for this and because liability in this matter is hotly contested, each Plaintiff's settlement payment is for wages and does not include liquidated damages.  Thus, each Plaintiff's individual settlement amount was determined by adding 65 minutes to each work week he or she was employed as a Handler within the three-year period preceding the date he or she filed a Consent to Join this action.  If a Plaintiff was employed in New York, that plaintiff will receive compensation for an additional 65 minutes for each week he or she was employed as a Handler within the six-year period preceding the filing of his or her Consent to

Join this action.[2]  All Plaintiffs received a minimum allocation of $50.45.  Accordingly, if a Plaintiff had no damages when assuming 65 minutes of off-the-clock time, he or she received $50.45.

In exchange for the settlement payments, Plaintiffs will release their claims for unpaid wages and liquidated damages pursuant to the FLSA, and all other federal, state, local, and common law wage and hour claims for the period each Plaintiff was employed as a Handler through and including the date of approval of this Settlement.

**<u>ARGUMENT</u>**

**III.    THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED.**

**A.    Standards for FLSA Settlements**

Pursuant to Eleventh Circuit precedent, judicial review and approval of an FLSA settlement involving a compromise provides final and binding effect.  *See Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  In discussing the approval of FLSA settlements, the Eleventh Circuit has noted:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

---

[2] A six-year statute of limitations applies to the unpaid overtime wages claims under New York law that have been asserted in this litigation.  Accordingly, a six-year statute of limitations has been applied to the claims of the Plaintiffs employed in New York.

"In deciding whether a settlement is fair and reasonable, the court considers the following factors: '(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.'" *Trentman v. RWL Communs., Inc.*, No. 15 Civ. 89, 2015 U.S. Dist. LEXIS 113966, at *4 (M.D. Fla. Aug. 26, 2015) (*citing Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592, 2007 U.S. Dist, LEXIS 10287, at *2-3 (M.D. Fla. Jan. 8, 2007)); *see also Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). An FLSA settlement may be approved as fair even where plaintiffs receive in settlement substantially less than the amount they originally claimed. *See Rutland v. Visiting Nurse Assoc. of Central Fla., Inc.*, No. 07 Civ. 1130, 2008 U.S. Dist. LEXIS 61776, at *3-4 (M.D. Fla. July 29, 2008). Discovery – including the production of records – as well as the risks associated with litigation and the viability of certain defenses, all may cause a plaintiff to settle for substantially less than the original amount claimed. *See id.* (approving FLSA settlement where plaintiffs settled for approximately 6% of the wages she originally claimed); *Edwards v. CFI Sales & Mktg.*, No. 09 Civ. 234, 2011 U.S. Dist. LEXIS 134705, at *13 (M.D. Fla. Nov. 4, 2011) (approving settlement where plaintiffs recover was well below that stated in court interrogatories). In addition, the dispute over the damages at issue in light of the defendant's affirmative defenses, liquidated damages, and the applicable statute of limitations may cause an FLSA plaintiff to accept substantially less in settlement than originally claimed. *See Ford v. Property Preservation Experts, Inc*., No. 11 Civ. 1995, 2012 U.S. Dist. LEXIS 107194, at *6-10 (M.D. Fla. July 31, 2012) (approving FLSA settlement where one opt-in plaintiff settled for less than 3% of his original claimed back wages).

In short, "[t]he Court should be mindful of the strong presumption in favor of finding a settlement is fair." *Id.* at *3 (internal citations omitted).

    **B.**    **The Parties Had a *Bona Fide* Dispute.**

    In the instant case, the Settlement is fair because it is a reasonable resolution of a *bona fide* dispute, reached *via* arm's length negotiation between adversarial parties and counsel after having litigated the claims for two years. Many factual and legal issues in this case were disputed at the time of settlement; some of which are set forth below.

    ***First***, Plaintiffs contended that Defendants required them to perform work off the clock. Defendants denied Plaintiffs' allegations, and maintained that at no time did Plaintiffs perform work off the clock, and that Defendants' time and payroll records reflected that Plaintiffs were paid for all hours worked. Defendants contended Plaintiffs did not work any hours other than those reflected in the time records Defendants produced for Plaintiffs. Therefore, Plaintiffs did not work off the clock before their shifts, after their shifts, or between trucks. Further, Defendants contended that if any Plaintiff worked during his or her lunch break, that Plaintiff was credited for that time.

    ***Second***, Defendants contended that although Plaintiffs obtained conditional certification, Defendants intended to seek decertification later because the alleged differences between the duties and individualized circumstances of each Plaintiff were substantial and predominated over any alleged common issues. For example, Plaintiffs worked in different locations, in over 20 different states, and under different supervisors. Defendants further contended that off-the-clock claims, such as Plaintiffs', are regularly decertified where, as here, the Defendants have a clear policy prohibiting off-the-clock work, and where a multitude of locations and individual circumstances exist. Further, Defendants maintained that Plaintiffs differed in their allegations of

off-the-clock work in that some Plaintiffs alleged working off the clock before they were punched in, but not after they were punched out.  Similarly, Defendants maintained that the questionnaire responses showed great variance in the manner and amount of alleged off-the-clock work, with some Plaintiffs stating they were always clocked in when performing work.  Additionally the calculation of each Plaintiff's damages, in this mostly piece-rate pay case, would be very complicated and necessitate an individualized inquiry, further predominating over any alleged common issues.

*Third*, if Defendants obtained decertification, then the Plaintiffs, who worked in over 20 different states, would all have to bring their claims on an individual basis in different courts throughout the country, making recovery of unpaid wages challenging, risky, and costly, after having already spent hundreds of thousands of dollars litigating this action.

## C.  The Settlement is a Fair and Reasonable Resolution of the Claims.

The Settlement satisfies all of the factors demonstrating that it is a fair and reasonable resolution of the claims.  *Trentman*, 2015 U.S. Dist. LEXIS 113966, at *4.

### i.    There Is No Fraud or Collusion Behind the Settlement.

The Settlement was the result of intense adversarial arm's length negotiations that took place after two years of litigation, discovery involving the production of over 50,000 pages of documents, service of, and responses to, interrogatories, requests for admissions, and requests for production, and preparation for depositions of Plaintiffs and Defendants' Corporate Representatives.  Attorneys on both sides are experienced and specialize in wage and hour cases. Based upon these facts, there is no fraud or collusion, thereby demonstrating that the Settlement is fair and reasonable.  *See Weldon v. Backwoods Steakhouse, Inc*., No. 14 Civ. 792014 U.S. Dist. LEXIS 123285, at *4-5 (M.D. Fla. July 15, 2014).

### ii.    Complexity, Length, and Expense of Further Litigation.

"When the prospect of ongoing litigation threatens to impose high costs of time and money on the Parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Vassallo v. Goodman Networks, Inc.,* 2016 WL 6037847, at *2 (E.D. Tex. Oct. 14, 2016). This case is a particularly complex collective action involving significant risks for the Parties as to both legal and factual issues. Additionally, Plaintiffs alleged state law class action claims under Pennsylvania, New York, Massachusetts, Wisconsin and Ohio laws. Therefore, this action had the potential to expand even more if class certification was also granted. The Parties agreed to settle the case in order to avoid the burden, expense, and uncertainty of litigating Plaintiffs' claims. Numerous depositions were set to begin of both Plaintiffs and Defendants' witnesses just four days after the settlement conference. Defendants would have been required to incur the cost of reviewing and producing tens of thousands more of additional pages of documents relating to the over 250 depositions the Parties were set to take, preparing their witness(es) for depositions and taking depositions of the Plaintiffs. There would potentially be over 250 depositions in this case, after which the Parties would be required to prepare for the burden and expense and uncertainties of motions to decertify the collective, Rule 23 class certification, and for summary judgment. Attorneys' fees and costs were at a point that they were about to increase at a much faster rate than before because of all the discovery each side was prepared to engage.

There is also no question that litigating the case to trial would require substantial time and expenses in addition to that already expended. A trial to be conducted relating to the claims of this many Plaintiffs and the defenses raised by Defendants with respect to the collective (and potential state law classes) posed its own set of complexities, ranging from various legal and factual issues

and proof issues, but also to coordinating testifying Plaintiffs from states across the country. Thus, additional litigation undoubtedly would increase the expenses and complexity of this litigation.

Based upon these facts, the complexity, length and expense of litigation demonstrate that the settlement is fair and reasonable. *Prada v. DCS Enters.*, 16 Civ. 850, 2017 U.S. Dist. LEXIS 124068, at *6-7 (M.D. Fla. Aug. 7, 2017)

### iii. The Stage of the Proceeding and Amount of Discovery Completed.

This factor "evaluate[s] whether 'the Parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Vassallo.,* 2016 WL 6037847, at *2 (*quoting Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632, 651 (N.D. Tex. 2010)). This case was resolved after two years of litigation, production of over 50,000 pages of documents, and responses by over 400 Plaintiffs to questionnaires and Court Interrogatories. The information and discovery exchanged to date provided the Parties ample information to evaluate the hours recorded, the potential hours of off-the-clock work, and the potential issues with proof. From this discovery, the Parties could fully and fairly evaluate the merits of their respective positions. And so can the Court given its extensive involvement with the case as demonstrated by, among other things, its consideration of the conditional certification motion, its various discovery and scheduling orders, Magistrate Hoffman's conducting two settlement conferences (and finding the Settlement for Damages fair and reasonable), and reviewing all the details in this Motion. Based upon these facts, this factor demonstrates that the Settlement is fair and reasonable.

### iv. The Probability of Plaintiffs' Success on the Merits.

Plaintiffs remain steadfast about the validity and merits of their claims. However, they acknowledge that substantial risks remain regarding whether they ultimately would have prevailed on those claims. Further, Defendants have remained clear that they would seek decertification of

the class, and Plaintiffs appreciate that there is a risk that Defendants could succeed on their anticipated motion. The Plaintiffs worked at various locations, in different departments, on different shifts, and in over 20 different states. Defendants assert that their facilities vary by size, sales volume, layout, client, and staff, which directly impact the Plaintiffs' job duties and the policies that apply to them.

Even if Plaintiffs survived decertification, the risk of on adverse ruling on summary judgment or at trial on the merits of the claims is real. Defendants assert that Plaintiffs were compensated for all their hours worked, and Plaintiffs' time records indicate that in many weeks they were paid for overtime. Therefore, a jury could conclude that Plaintiffs did not work any hours in addition to those reflected in Plaintiffs' time records. Based upon these facts, this factor demonstrates that the Settlement is fair and reasonable.

### v. The Range of Recovery.

The Gross Settlement Amount of $315,000.00 is favorable and provides the Plaintiffs sufficient consideration for their alleged claims. The Settlement brings the Plaintiffs monetary value, now, not years from now, and provides certainty about the outcome. Here, the Parties also disagreed with whether a three-year or two-year statute of limitations applies, as well as whether liquidated damages would be recoverable by the Plaintiffs. Defendants maintained that even if Plaintiffs prevailed, Plaintiffs could not meet their burden to demonstrate that Defendants' conduct was willful thereby triggering a third year of liability under the FLSA. Nonetheless, for settlement purposes only, Plaintiffs were able to secure consideration for the third year of the statute of limitations. Therefore, each Plaintiff, even those with weeks worked only in the third year of the statute of limitations, will recover alleged unpaid wages under the Settlement Agreement.

Each Plaintiff will receive compensation for approximately 65 minutes of additional time for each week they worked as a Handler within the three (3) year period preceding their filing of a Consent to Join in this action.  Although the amount of alleged off-the-clock time varied among the Plaintiffs up to as many to as many as 15 hours per week, the time records produced by Defendants indicate that Plaintiffs were compensated for as much as 26 hours overtime in a work week, and therefore, significant numbers of unrecorded and unpaid overtime hours were unlikely. The records also showed that Plaintiffs were not punched out from work during their shifts, which indicates they were not punched out in between trucks.  Based on these facts, significant off the clock work before, during and after scheduled shifts was unlikely.  With respect to lunch breaks, the records indicate that many Plaintiffs were clocked out for lunch but Plaintiffs dispute that meal breaks were regularly taken when they clocked out, and maintain they performed work during their lunch breaks.  Defendants deny this contention.  The time records also indicated in some incidents that no meal breaks were deducted, so although Plaintiffs may have not received a lunch break, they were paid for that time.

Generally, "[a] plaintiff cannot waive her right to liquidated damages in a FLSA settlement when there is no genuine dispute about whether she is entitled to them." *Nall v. Mal–Motels, Inc.,* 723 F.3d 1304, 1307 (11th Cir.2013) (*citing Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)).  However, where the evidence demonstrates a bona fide dispute between the parties as to whether the FLSA was violated, a plaintiff's decision not to pursue liquidated damages does not render the proposed settlement agreement unfair or unreasonable. *Eiland v. U.S. Walls, LLC,* No. 6:13-CV-1237-ORL-40, 2015 WL 478372, n. 8 (M.D. Fla. Feb. 4, 2015); *see also Patterson v. Acad. Fire Protec., Inc.*, No. 3:13-CV-87-J-34JBT, 2014 WL 169812, at *5 (M.D. Fla. Jan. 8, 2014) (approving FLSA settlement agreement that lacked liquidated

14

damages award where parties agreed that there was no evidence of defendant's bad faith or knowledge of uncompensated work hours).

Here, the parties' settlement does not provide for liquidated damages because there is a genuine dispute between the parties as to whether Defendants violated the FLSA and whether Defendants had any knowledge of alleged off-the-clock work. Defendants contend that FHI associates were provided several timely opportunities on a daily and weekly basis to review and verify that their recorded work hours were correct and they were compensated for all hours worked. Therefore, Defendants had no reason to believe that their time records were inaccurate. Defendants have upwards of thousands of pages of Associate Daily Hours Reports signed by the Plaintiffs affirming that their recorded work hours were correct. Further, declarations from many of Defendants' other handlers and managers refute Plaintiffs' allegations that they were required to work off the clock. Thus, there is a bona fide dispute as to whether Defendants violated the FLSA. Certainly, given Defendants policies and practices, they could argue good faith and that they were unaware of any violations, making an award of liquidated damages questionable at best. Moreover, in exchange for dropping liquidated damages and to maximize the amount of wages paid to each Plaintiff, the Parties agreed to apply a three-year statute of limitations when calculating wages despite the absence of any evidence of bad faith on Defendants' part. This bargained-for increase in recovery by adding a third year militates against liquidated damages being required. Accordingly, the absence of a liquidated damages award does not, under these circumstances, preclude the Court's approval of the proposed settlement agreement.

Based upon these facts, including the presence of a bona fide dispute, this factor demonstrates that the settlement is fair and reasonable.

### vi.    The Opinions of Counsel.

The experience of the Parties' respective counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the Settlement.  When reviewing settlement agreements, courts are "entitled to rely upon the judgment of experienced counsel for the Parties .... [and] absent fraud, collusion, or the like, [courts] should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977);[3] *Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 632 (11th Cir. 2015); *Graham v. Pyramid Healthcare Sols., Inc*., No. 16 Civ. 1324, 2017 U.S. Dist. LEXIS 167062, at *3-4 (M.D. Fla. Oct. 10, 2017).

Counsel for the Parties had an immense amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the Settlement.  In counsel's opinion, the Settlement is fair, reasonable, and adequate.  Also, in the view of Plaintiffs' Counsel, the Settlement provides substantial benefits to the Plaintiffs, especially when one considers, among other things, the possibility of decertification, and the potential for an adverse decision on the merits even if Plaintiffs successfully oppose decertification.

### D.  Attorneys' Fees and Costs.

Pursuant to 29 U.S.C. § 216(b), a plaintiff who prevails on an FLSA claim is entitled to an award of reasonable attorneys' fees and expenses.  "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Awards for attorneys' fees and costs in FLSA cases often exceed the amount of damages at issue for the plaintiffs, and fee awards need not be proportional to the recovery for the plaintiffs. *Riverside v. Rivera*, 477 U.S. 561, 578 (1986) ("A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.").

---

[3] Fifth Circuit cases decided before October 1, 1981, are binding on the Eleventh Circuit.

Based on this judicial preference for settlement, on November 17, 2020, the parties attended a second settlement conference with Judge Hoffman at which the only issue to be resolved was the amount of attorneys' fees and costs to be paid to Plaintiffs' Counsel. Ultimately, the parties agreed to resolve the claim for attorneys' fees and costs for $400,000.00. Defendants do not oppose an award of $400,000.00 in attorneys' fees and costs, but rather separately agreed to it after resolving the amounts for Plaintiffs.

Here, Plaintiffs' counsel's fees and costs were negotiated separately from the Plaintiffs' recovery, and did not compromise the Plaintiffs' recovery. Where attorney's fees are negotiated separately from, and subsequent to, plaintiff's recovery, the same clearly was not affected by the amount of the attorneys' fee. *Bonetti v. Embarq Mgmt. Co*., 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *see also Gertz v. Coastal Reconstruction*, 2014 U.S. Dist. LEXIS 130302, at *5 (M.D. Fla. Sept. 10, 2014); *King v. My Online Neighborhood, Inc*., 2007 U.S. Dist. LEXIS 16135 (M.D. Fla. Mar. 7, 2007). Thus, there is "no need to further scrutinize the amount allocated for attorneys' fees and costs [as] they were negotiated separately and apart from the compensation paid to Plaintiff." *Welch v. Moonlite Hospitality Servs., LLC*, 2011 U.S. Dist. LEXIS 137145, at *5, n. 2 (M.D. Fla. Nov. 28, 2011) (citations omitted).

Plaintiffs' Counsel asserts that the total fees for the work performed representing the Plaintiffs in this case is $709,079.60 for 1,907.5 hours of attorney and paralegal. The following chart is a summary of the time and effort invested by Plaintiffs' Counsel:

**Shavitz Law Group**

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Alan Quiles | 78.4 | $450.00 | $35,280.00 |
| Christine Duignan | 95.0 | $450.00 | $42,595.00 |
| Camar Jones | 807.2 | $400.00 | $322,880.00 |
| Gregg Shavitz | 53.6 | $500.00 | $26,800.00 |
| Abram Kreeger | 1.2 | $150.00 | $180.00 |
| Erma Rodriguez | 86.2 | $150.00 | $12,930.00 |

| | 50.6 | $150.00 | $7,590.00 |
|---|---|---|---|
| Maya Ghumrawi | 50.6 | $150.00 | $7,590.00 |
| Rita Claude | 13.4 | $150.00 | $2,010.00 |
| Serena Eifert | 20.8 | $150.00 | $3,120.00 |
| **Total** | **1,206.4** | | **$453,385.00** |

**Morgan & Morgan**

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Chanelle Ventura | 48.20 | $200.00 | $9,640.00 |
| Matthew Gunter | 317.20 | $400.00 | $126,880.00 |
| Paul Botros | 260.10 | $425.00 | $110,542.50 |
| Christie Effron | 67.7 | $110.00 | $7,447.10 |
| Claire Tacher | 7.9 | $150.00 | $1,185.00 |
| **Total** | **701.1** | | **$255,694.60** |

Plaintiffs' Counsel represent that this reflects the time actually spent, in the exercise of reasonable judgment by the lawyers and staff involved and is reflected in their detailed time records. The work undertaken includes drafting of pleadings, motion practice (including Plaintiffs' Motion for Conditional Certification, Plaintiffs' Motion for Leave to Amended Complaint, and various discovery motions), preparation of discovery responses, including questionnaire responses from the Opt In Plaintiffs, and review of documents produced by Defendants in discovery (which, at the time of settlement, exceeded 50,000 pages), attendance at settlement conferences, negotiation of this settlement, and preparation of settlement and dismissal documents. The time and labor required in the prosecution of this case and negotiating this settlement was substantial considering the history of this case. Plaintiffs' Counsel asserts that the hourly rates they seek are reasonable considering Plaintiffs' Counsel's expertise and familiarity and experience in FLSA collective and class action litigation.

In addition to the attorneys' fees, Plaintiffs' Counsel incurred out-of-pocket expenses in the amount of $47,007.76. The costs were incurred for administration of Notice to the putative class members through third party administrator, Rust Consulting, as well as travel, and printing

and postage costs (for mailing questionnaires to the Opt In Plaintiffs).  The expenses incurred in the prosecution of this case are reflected on the books and records of Plaintiffs' Counsel.  The costs described are accurate regarding all the expenses incurred; and constitute hard, out-of-pocket monetary expenses from the beginning of the case.  In total, Plaintiffs represent that they have incurred $756,087.36 in attorneys' fees and costs.

Defendants opposed Plaintiffs' Counsel's fees and costs of $756,087.36 on the basis that they were overstated.  First, Defendants contend that Plaintiffs' Counsel hourly rates are neither supported by their years of practice or expertise or the prevailing market rates.  Second, Plaintiffs' Counsel failed to staff this case efficiently.  Third, many of the hours that Plaintiffs' Counsel purports to have spent on this matter were in performance of non-compensable clerical and administrative tasks, such as scheduling, filing documents, organizing files, copying documents, checking the docket, updating files, checking court dates, and mailing items.  Finally, Defendants assert that Plaintiffs' Counsel time records demonstrate that Plaintiffs' Counsel failed to apply any business judgment to their billings as demonstrated by multiple inconsistent time entries and trying to recover for clearly frivolous legal work, such as marketing, imprudent motions, and boilerplate discovery responses resulting in orders compelling discovery.   Thus, while Defendants acknowledge that Plaintiffs' Counsel are entitled to recover their fees and costs, Defendants maintained that a significant portion of the $756,087.36 in fees and costs Plaintiffs' incurred are unreasonable, unnecessary, and/or unrecoverable.  The Defendants believe that the agreed to fees and costs amount of $400,000.00 is reasonable and more aligned with what could be expected in a matter such as this.

The resolution of the claim for attorneys' fees and costs in the amount of $400,000.00 represents a 48% discount from the attorneys' fees and costs Plaintiffs' represent they have

incurred.  Given the risks presented by this action, the results obtained, and the disagreement between the parties regarding the reasonableness of the asserted fees and appropriate exercise of billing judgment, the fee and cost compromise is decidedly reasonable and not opposed by Defendants.  Plaintiffs assert that there will be significant future time spent by Plaintiffs' Counsel in speaking with Plaintiffs about the settlement, and distribution of the settlement checks, which will reduce the percentage recovered even further.

## VIII.  CONCLUSION

The Settlement is fair and reasonable, and Parties respectfully request the Court approve the Settlement Agreement which consists of $315,000 in backpay damages for the Plaintiffs and $400,000.00 in separately negotiated attorneys' fees and costs.

Respectfully submitted this 9th day of December, 2020.

<div style="display: flex; justify-content: space-between;">
<div>

**Counsel for Plaintiffs**

s/*Camar R. Jones*
Matthew R. Gunter, Esq.
Florida Bar No.: 007745920
E-mail: mgunter@forthepeople.com
**MORGAN & MORGAN, P.A.**
N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 867-4791

*and*

Paul Botros, Esq.
Florida Bar No.: 0063365
E-mail: pbotros@forthepeople.com
**MORGAN & MORGAN, P.A.**
8151 Peters Road
Suite 4000
Plantation, FL 33324
Telephone: (954) 327-5352
Facsimile: (954) 327-3017

*and*

Gregg I. Shavitz
Florida Bar No.: 011398
E-mail: gshavitz@shavitzlaw.com
Camar Jones
Florida Bar No.: 720291
E-mail: cjones@shavitzlaw.com
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

</div>
<div>

**Counsel for Defendants Freight Handlers, Inc. and FHI, LLC**

s/*Yendelela Neely Holston*
Kevin W. Shaughnessy, Esq.
Florida Bar No.: 0473448
E-mail: kshaughnessy@bakerlaw.com
Ashley M. Schachter, Esq.
E-mail: aschachter@bakerlaw.com
Florida Bar No.: 0119374
**BAKER & HOSTETLER LLP**
200 South Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

*and*

Randall D. Avram, Esq.
NC Bar No.: 13403
Email: RAvram@kilpatricktownsend.com
Yendelela N. Holston, Esq.
GA Bar No.: 424429
Email: YHolston@kilpatricktownsend.com
Noelle Abastillas, Esq.
GA Bar No.: 211589
Email: NAbastillas@kilpatricktownsend.com
**KILPATRICK TOWNSEND LLP**
4208 Six Forks Rd., Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700

</div>
</div>